UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MALISSA REGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:23-cv-00065-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| MARTIN O'MALLEY, *Acting* | ) | **ORDER** |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Malissa Regan seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's administrative decision denying her application for Social Security Disability Insurance and Supplemental Security Income Benefits. For the reasons stated below, the Court will **AFFIRM** the administrative decision.

**I**

Ms. Regan filed her application for benefits on July 18, 2018, alleging disability beginning on February 13, 2018. [R. 13 at 4.] Her application was denied initially and upon reconsideration. *Id*. Ms. Regan then submitted a written request for a hearing. *Id*. A telephonic hearing occurred on February 19, 2020. *Id*. After an unfavorable decision issued, Ms. Regan requested review by the Appeals Council. *Id*. The Council reviewed the matter and remanded it to the ALJ, who issued an unfavorable decision on February 22, 2022. *Id*. Ms. Regan again requested review by the Appeals Council. This time, the Council denied the request for review, rendering the ALJ's February 22, 2022, decision the final decision of the Commissioner. *Id.*; 20 C.F.R. § 404.981 (2024).

Ms. Regan alleges disability due to a number of impairments. [R. 9 at 24.] She suffers from "degenerative disc disease including the cervical spine without radiculopathy or myelopathy; headaches; chronic fatigue/pain-fibromyalgia; depression and anxiety; obesity; osteoarthritis of the SI joints [and]; arthritis[.]" *Id.* Ms. Regan additionally suffers from sleep apnea, hypertension, degenerative joint disease of the right elbow, hyperlipidemia, hypothyroidism, mild chronic kidney disease, bariatric surgery, and GERD. *Id.*

In evaluating a claim of disability, the Administrative Law Judge ("ALJ") conducts a five-step analysis. *See* 20 C.F.R. § 404.1520 (2024).[1] First, if a claimant is performing a substantial gainful activity, she is not disabled. § 404.1520(b). Second, if a claimant does "not have any impairment or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities," then she does not have a severe impairment and is not "disabled" as defined by the regulations. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC),

---

[1] The Sixth Circuit summarized this process in *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. § 404.1520(e); 20 C.F.R. § 404.1545 (2024). Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, she is not "disabled." § 404.1520(e), (f). The claimant has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, she is "disabled." *Id.*; § 404.1520.

In this case, the ALJ issued his written decision on February 22, 2022. [R. 9 at 21–37.] At Step 1, the ALJ found that Regan has not engaged in substantial gainful activity since the onset date. *Id.* at 23. At Step 2, the ALJ found that Regan "has the following severe impairments: degenerative disc disease including the cervical spine without radiculopathy or myelopathy; headaches; chronic fatigue/pain-fibromyalgia; depression and anxiety; obesity; osteoarthritis of the SI joints [and]; arthritis[.]". *Id.* at 24. At Step 3, the ALJ concluded that Regan did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," so his analysis continued to the next step. *Id.* at 25. At Step 4, the ALJ concluded that Ms. Regan "has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except[:]"

> [F]requent reaching, handling and fingering with the exception of occasional overhead reaching; occasional climbing of ramps; never climbing stairs; never climbing ladders, ropes, and scaffolds; occasional operation of foot controls with the bilateral lower extremities; occasional balancing as defined by the Selected Characteristics of Occupations; occasional stooping and kneeling; never crawling; occasional concentrated exposure to extreme cold, vibrations, and industrial

3

> lighting; never to work at unprotected heights; never to work with or near dangerous machinery or equipment; never to operate motorized vehicles as a work requirement; a work environment to be no louder than a moderate noise level as defined by the Selected Characteristics of Occupations; can perform simple tasks; no production rate pace work; can understand and follow simple routine rote instructions; can make simple routine decisions; can have frequent work-related contact with supervisors and occasional work-related contact with coworkers and the public; can tolerate frequent changes to the workplace setting that are gradually introduced.

*Id.* at 27. Finally, at Step 5, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id.* at 36. As a result, he concluded that Ms. Regan was not disabled. *Id.* at 37. The Appeals Council found no reason for review. *Id.* at 9–11. Ms. Regan now seeks judicial review in this Court.

## II

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### A

First, Ms. Regan argues that the ALJ's Step 3 findings are unsupported and inconsistent. [R. 13 at 12.]  She contends the ALJ erred when he determined her headaches were not a disability within the meaning of 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 11–16. Additionally, she states that the ALJ made inconsistent findings when he concluded her headaches were simultaneously severe and not substantially interfering with her functioning.  *Id.* at 12.  Finally, she alleges that the ALJ engaged in cherry-picking by ignoring evidence that Regan's headaches are disabling.  *Id.* at 15–16.  The Commissioner disagrees, stating that Ms. Regan did not meet her burden of proving a disability.  [R. 17 at 7.]  The Court agrees with the Commissioner.

### 1

At Step 3, the ALJ analyzes whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1.  *See* 20 C.F.R. § 404.1520(d).  A claimant can "equal" a listed impairment if her condition is medically

5

equivalent. If the claimant meets or equals one of the impairments, she is *per se* disabled. Listing 11.02 is the most likely match for a disabling primary headache disorder. *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *3 (6th Cir. May 26, 2023) ("Listing 11.02 [is] 'the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder.'" (quoting SSR 19-4P, 2019 WL 4169635, at *7 (Aug. 26, 2019))). Nevertheless, it is "uncommon" for a person with a primary headache disorder to equal the symptoms listed in 11.02. SSR 19-4P, 2019 WL 4169635, at *7.

## 2

Ms. Regan states that her headaches are the medical equivalent of a dyscognitive seizure within the meaning of Listing 11.02.

## a

11.02 defines dyscognitive seizures as follows:

> Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure[].

20 C.F.R. § 404, Subpart P, Appendix 1. To qualify as disabling, the seizures must occur "at least once a week for at least 3 consecutive months [] despite adherence to prescribed treatment[.]" § 404, Subpart P, Appendix 1. Alternatively, the seizures are also disabling if they occur "at least once every 2 weeks for at least 3 consecutive months[,] despite adherence to prescribed treatment," and with a "marked limitation" in "physical functioning," "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or

maintaining pace," or "adapting or managing oneself."[2] § 404, Subpart P, Appendix 1. A headache disorder may qualify as medically equivalent under 11.02 even if the claimant does not have seizures. In assessing whether the headache disorder is equal to dyscognitive seizures, the ALJ considers:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4P, 2019 WL 4169635 at *7; *see also Broderick v. Kijakazi*, No. 2:21-cv-12480, 2022 WL 19518407, at *14 (E.D. Mich. July 12, 2022), *R. & R. adopted sub nom. Broderick v. Comm'r of Soc. Sec.*, No. 21-12480, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023) ("Symptoms including 'aura, alteration of awareness, and intense headache with throbbing and severe pain' with 'nausea and photophobia' with the need to 'lie down in a dark and quiet room for relief' lasting up to 72 hours twice weekly are sufficient to show medical equivalence.") (internal citation omitted).

### b

Here, the ALJ found that Claimant's headache condition was not medically equivalent to Epilepsy under 11.02. In so finding, the ALJ explained that:

> The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed

---

[2] Only one of these marked limitations needs to be established.

impairment, and the claimant makes no argument to the contrary. Nor has any acceptable medical source designated to make equivalency findings concluded that the claimant's impairments medically equal a listed impairment.

[R. 9 at 25.] Substantial evidence supports the ALJ determination. *See Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 644 (6th Cir. 2006). Ms. Regan correctly points out that most of the ALJ's reasoning surrounding Claimant's headaches was relegated to the RFC section of his opinion (as opposed to his Step 3 analysis). But that fact is neither here nor there. The ALJ's conclusion in Step 3 is supported by "sufficient factual findings elsewhere in [the decision.]" *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

In his Step 5 analysis, the ALJ reviewed the Claimant's headache history as provided in her medical records. [R. 9 at 30.] He noted that Claimant has a diagnosis of chronic migraines, which are not considered intractable. *Id.* Her migraines are without aura and without status migrainosus. *Id.*; *Burks v. Saul*, No. 5:19-CV-00164-LLK, 2020 WL 2499591, at *2 (W.D. Ky. May 14, 2020) ("A migraine that lasts for more than 72 hours is called status migrainosus."); *Broderick v. Kijakazi*, 2022 WL 19518407, at *15 (finding no equivalency because "substantial evidence supports the conclusion that [claimant] did not regularly experience any of the other symptoms listed in SSR 19-4P to be considered in establishing equivalency, including auras, headaches of extended duration or intensity or ongoing side effects").

Ms. Regan's provider "suspected bilateral occipital neuralgia and medication overuse headaches[.]" [R. 9 at 30.] Regan was advised to limit over-the-counter medication, and she was started on Emgality. *Id.* She had, at various points, taken headache medication and performed physical therapy. *Id.* Both of these helped her headaches, at least for some period. *Id.* Ms. Regan did not report "triggers or tinnitus," and she appeared in "no acute distress." *Id.*

8

She also denied any hospitalization due to headaches, and her "clinical exam showed no cranial, nerve, motor, reflex, sensation, cerebellar, or gait abnormalities." *Id.*

The ALJ also noted that Ms. Regan is able to drive, care for herself independently, cook, do chores, take quick shopping trips, volunteer for an animal shelter, help care for her pet horse, journal, read, paint walls, use an elliptical machine (but only briefly), and take vacations. *Id.* at 32. *See Smith v. Comm'r of Soc. Sec.,* No. 2:21-cv-10093-SJM-JJCG, 2022 WL 1052427, at *4 (E.D. Mich. Mar. 4, 2022), *R. & R. adopted*, No. 2:21-CV-10093, 2022 WL 965022 (E.D. Mich. Mar. 30, 2022) (noting that claimant was not functionally limited within the meaning of 19-4 when she could drive, cook, grocery shop, do chores, and care for a teenager). Finally, the ALJ cited Regan's "frequently normal findings on mental status exams[.]" [R. 9 at 33]; *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence to establish a *per se* disabling listing constitutes substantial evidence).

Although it appears Ms. Regan's headaches met 11.02's frequency requirement, that fact does not establish equivalency on its own. *Smith v. Comm'r of Soc. Sec.*, 2022 WL 1052427, at *4 ("Although 'frequency of headache events' is a factor, it is one of several."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment."). Accordingly, the initial burden of proof and the deferential standard of review collectively militate in favor of affirming the ALJ decision.

Ms. Regan disagrees, stating her migraines give rise to an "alteration in consciousness" because they involve severe pain, dizziness, and sound and light sensitivity. [R. 13 at 14.] Be that as it may, this Court's role is not to resolve the alleged conflict in the evidence. Rather, the

9

Court is to determine whether substantial evidence supports the ALJ's decision. *Ulman*, 693 F.3d at 713; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'") (internal citation omitted). Though there may have been evidence to the contrary, the Claimant's medical records and her own statements are substantial evidence that her headache condition is not *per se* disabling.[3] *Ulman*, 693 F.3d at 714. Accordingly, the ALJ's determination must stand.

## B

Next, Regan challenges the ALJ's Step 5 RFC assessment. Specifically, she argues that the ALJ "invented" the limitations in the RFC "based upon his lay interpretation[.]" [R. 13 at 18.] Regan cites the "*Deskin* Rule," which she characterizes as requiring remand whenever an ALJ makes an RFC conclusion without a supporting medical opinion. *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008). The Commissioner disagrees, arguing first that the Sixth Circuit has cast doubt on the *Deskin* rule, and secondly that the ALJ considered and accounted for the record evidence. [R. 17 at 8–11.]

The Commissioner is correct. As a threshold matter, doubt has been cast upon the *Deskin* rule. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line

---

[3] Ms. Regan's also argues that the ALJ opinion was materially inconsistent because he found that her headaches were severe but not interfering with her life. Ms. Regan does not explain where the ALJ said that her headaches did not substantially interfere with her life. And the Court cannot locate a portion of the opinion to that effect.

rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."); *Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012) ("RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a); and *Deskin* 'is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals.'") (internal citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

  Here, in assessing the RFC, the ALJ "ma[de] a connection between the evidence relied on and the conclusion reached." *Tucker*, 775 F. App'x at 226. For instance, the ALJ rejected Dr. Gager's opinion that the Claimant had no mental health "restrictions or limitations." [R. 9 at 33.] In so doing, the ALJ cited Claimant's record of mental health problems. *Id.* Nevertheless, he found other portions of Dr. Gager's opinion convincing insofar as they were supported by Ms. Regan's medical records. *Id.* Further, the ALJ disagreed with the agency consultants' findings that Regan could lift 20 to 25 pounds. *Id.* at 35. In rejecting that finding, the ALJ considered Regan's medical records, including an MRI of her spine and her continuing treatment for fibromyalgia which caused her "fatigue and widespread pain." *Id.* Finally, in crafting the limitations in the RFC, the ALJ considered Claimant's own explanation of her physical capabilities. In particular, he noted that in spite of "complaints of chronic fatigue, there are numerous instances where [Ms. Regan] has reported improved energy or denied fatigue . . . . the record reflects that the claimant has engaged in significant activities such as helping her husband with projects, painting bedrooms, performing volunteer work, and taking trips[.]" *Id.* at 29.

11

Hence, it does not appear that the ALJ "invented" the limitations in the RFC on the basis of his "lay interpretation." Rather, he considered the Claimant's medical records, the Claimant's own statements, and various medical opinions. Because his decision was based on substantial evidence, it must stand.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389–90; *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). **ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Ms. Regan's Brief is **[R. 13]** is **DENIED**;
2. The Commissioner's Decision is **AFFIRMED**; and
3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 27th day of March, 2024.

Gregory F. Van Tatenhove
United States District Judge